```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT


RICHARD VASILE,                  :
                                 :
     Plaintiff                   :
                                 :
v.                               :    Case No. 3:10-cv-484(RNC) OP
                                 :
CITY OF HARTFORD, et al          :
                                 :
     Defendants                  :
```

<u>RULING AND ORDER</u>

Plaintiff Richard Vasile brings this action against the City of Hartford and Police Officers Lopez, Dufault, Scates, Ahlquist, and Manson, seeking relief for alleged constitutional violations arising from his arrest and detention.  Fourth and Eighth Amendment claims were previously dismissed.  The remaining claim is a Fourteenth Amendment substantive due process challenge to the conditions of pretrial confinement the plaintiff endured in the hours following his arrest.  Separate motions for summary judgment have been filed by the City and the individual defendants.  The officers argue that they are entitled to summary judgment on three grounds: (1) they were not "personally involved" in creating the conditions of pretrial confinement, (2) the conditions in question did not violate due process, and (3) the officers are entitled to qualified immunity.  Viewing the record in a light most favorable to the plaintiff, I conclude that the officers are entitled to qualified immunity as a matter of law and therefore grant the officers' motion.  The City seeks

summary judgment on the ground that the plaintiff has failed to show any relevant "custom or policy," failed to name a final policymaker as a defendant, and failed to establish that any of the named defendants were policymakers as required for municipal liability under Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978).  I agree and therefore grant the City's motion as well.

I. FACTS

The parties' Local Rule 56(a)(1) and (2) statements and supporting citations to the record establish the following facts. On March 22, 2007, at around 11:00 p.m., a number of Hartford police officers entered a nightclub owned and operated by the plaintiff.  A total of 114 people were arrested as a result of the raid, including the plaintiff.  The police department had two transport vans with a capacity of 12-15 people each, and the police made several trips to transport the arrestees to the police department.  The plaintiff was placed in the last van, which left the club at 4:00 a.m.

When they arrived at the Police Department, the arrestees were held in the vans for several hours as other arrestees were processed.  The Department had seven holding cells of various sizes, with a total capacity of 68 people.  Each cell except one had a toilet and sink, and drinking water was available to detainees on request.  The plaintiff was processed at around

8:30 a.m., and released at 1:30 p.m.

In his opposition papers, plaintiff asserts that there are several disputed facts.  First, he contends that he was held in a van for four hours before being removed and processed.  EFC #55-1, p. 4.  A four-hour period before processing is consistent with the defendants' estimated 2-to-6 minute processing time for each arrestee.  Accordingly, the Court accepts the plaintiff's assertion for purposes of this ruling.

Next, the plaintiff asserts that he was confined in a cell "so crowded that it was not possible to sit or lie down, and all prisoners were forced to stand for hours."  Id.  It is unclear from the record how many people were held in each van and cell, but it is undisputed that the conditions were crowded and the defendants admit that the cells were "quite full."  ECF #47-1 ¶ 28.  With all inferences drawn in favor of the plaintiff, the Court assumes that the vans and cells were severely overcrowded.

Finally, the plaintiff asserts that he was "held under these inhumane conditions for approximately thirteen (13) hours."  ECF #55-1, p. 4.  It is undisputed that the plaintiff was held in the van from 4:00 a.m. to 8:00 a.m., then in the holding cell until 1:30 p.m., by which time there was only one other person in the cell with the plaintiff.  Plaintiff's Deposition [ECF #56-2] p.

83 lns. 8-10.[1]

## II. QUALIFIED IMMUNITY

Qualified immunity protects government actors from liability for damages under § 1983 unless their actions violated a clearly established right. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Poe v. Leonard, 282 F.3d 123, 135 (2d Cir. 2002) (quoting Anderson v. Creighton, 483 U.S. 635, 635 (1987)). It is not necessary that "the very action in question has previously been held unlawful" but "in the light of pre-existing law the unlawfulness must be apparent." Tellier v. Fields, 280 F.3d 69 (2d Cir. 2000). If the right was clearly established, the court "moves to the final inquiry of whether it was objectively reasonable for the officers . . . to believe that their conduct was lawful." Rodriguez v. Connecticut, 169 F. Supp. 2d 39, 48 (D. Conn. 2001).

The plaintiff does not cite, and independent research has not disclosed, any Supreme Court or Second Circuit case clearly establishing that the conditions of the plaintiff's detention violated the Due Process Clause. The case law does establish

---

[1] The plaintiff also disputes the officers' assertion that none of them was personally involved in the alleged deprivations of due process. Because the Court finds that all the officers are entitled to qualified immunity, it is unnecessary to determine which of them might have been personally involved.

that confinement before trial cannot amount to "punishment," as this would violate the Fourteenth Amendment right to due process before being deprived of liberty.  Bell v. Wolfish, 441 U.S. 520, 535 (1979); see also Lareau v. Manson, 651 F.2d 96, 102 (2d Cir. 1981) (constitutionality of pretrial confinement is judged by a stricter standard than post-conviction confinement.  For an officer endeavoring to distinguish punitive from non-punitive conditions, the opinion in Bell provides the following guidance: "if a restriction or condition is not reasonably related to a legitimate goal – if it is arbitrary or purposeless – a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees."  Id. at 539.

In Bell, the Supreme Court overturned an injunction against "double-bunking," a practice of housing two pretrial detainees in cells made for one.  Id. at 542.  The detainees were locked in small cells (about 75 square feet) for seven or eight hours each night, for no more than 60 days.  Id. at 543.  The cells provided "more than adequate" space for sleeping, and the detainees were free to move around the otherwise uncrowded facility during the day.  Id.  Though the injunction was overturned, the Court noted that "confining a given number of people in a given amount of space in such a manner as to cause them to endure genuine privations and hardship over an extended period of time might

5

raise serious questions under the Due Process Clause as to whether those conditions amounted to punishment." Id. at 542.

The Second Circuit distinguished Bell in a 1981 case involving jail overcrowding, finding unconstitutional the conditions of a facility where detainees were subject to extremely overcrowded conditions, night and day, and where most detainees in the facility at any given point had been there in excess of 60 days. Lareau v. Manson, 651 F.2d 96, 104 (2d Cir. 1981). The Court rejected the officials' argument that the hardships due to overcrowding were related to security: "The only conceivable purpose overcrowding in the HCCC serves is to further the state's interest in housing more prisoners without creating more prison space. This basically economic motive cannot lawfully excuse the imposition on the presumptively innocent of genuine privations and hardship over any substantial period of time." Id. The Court observed that crowded conditions do not "necessarily rise to the level of punishment when imposed for a short period of time," and concluded that "the double-bunked cells and overloaded dayrooms . . . would be constitutionally permissible for presumptively innocent detainees for a maximum of 15 days." Id. at 105.

Other than Bell and Lareau, which explore the constitutionality of crowded jail conditions for long-term pretrial detainees, there is no controlling precedent pertaining

to the plaintiff's claims.[2]  In the absence of other controlling precedent, it cannot be said that the officers violated a clearly established right.  Indeed, given the exigencies the officers faced as a result of the arrests of 114 people, a reasonable person in their position could believe that detaining the arrestees in overcrowded conditions was unavoidable and thus not unlawful under the deferential standard adopted in Bell.  Accordingly, the officers are entitled to qualified immunity.

III. MONELL LIABILITY

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."

---

[2] The Fifth Circuit reversed a denial of qualified immunity in a factually similar case, holding that an overnight detention in a crowded and dirty holding cell, where the defendant-officer was legitimately unable to get a judge to the jail late on a Sunday, is a "de minimis level of imposition" that "easily [met] the deferential, rational basis Bell test."  Collins v. Ainsworth, 382 F.3d 529, 546 (5th Cir. 2004).  The Eleventh Circuit reversed a denial of qualified immunity even though a detainee stated a claim for unconstitutional conditions when he was held pending trial in overcrowded, unsanitary jails.  Jordan v. Doe, 38 F.3d 1559, 1567 (11th Cir. 1994).  The Court explained, "Determining when overall conditions of confinement are 'sufficiently serious' to violate the constitution demands a fact-intensive analysis. . . . Absent a court ruling, we would expect a reasonable government official to 'know' that overall conditions of confinement are clearly unconstitutional only in a truly extreme case."  Id.

Monell, 436 U.S. at 694.  "Although a plaintiff need not provide direct evidence of the custom or policy at issue, 'the mere assertion that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.'"  Maxwell v. City of New York, 272 F. Supp. 2d 285, 302 (S.D.N.Y. 2003), aff'd in part, 108 F. App'x 10 (2d Cir. 2004) (re: conditions of confinement), rev'd in part, 380 F.3d 106 (2d Cir. 2004) (re: excessive force) (quoting Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993)).

   Here, the complaint alleges that the City of Hartford "acting through its highest policy-setting officials for such matters, had refused to provide sufficient space to hold arrested prisoners under minimally decent conditions of confinement." Compl. ¶ 12.  The City moves for summary judgment on the grounds that it had no "policy or custom" of improper pretrial conditions of confinement, and that none of the individual defendants was in a policymaking position.  Plaintiff identifies no evidence in the record that the City had such a custom or policy and the Court's own review of the record discloses no such evidence.  See Maxwell, 272 F. Supp. 2d at 302.  Summary judgment is therefore appropriate on the Monell claim.

IV. CONCLUSION

   Accordingly, the motions for summary judgment are hereby

granted.  Judgment will be entered in favor of the defendants.

**SO ORDERED** this 30th day of September 2013, at Hartford, Connecticut.

>                    /s/
>           Robert N. Chatigny
>       United States District Judge